Filed 7/26/23  Charles M. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLES M.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Real Party in Interest. | F086344<br><br>(Super. Ct. No. 21CEJ300367-1)<br><br>**OPINION** |

## THE COURT<sup>*</sup>

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Amythest Freeman, Judge.

Kevin G. Little for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Ashley N. McGuire, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

<sup>*</sup>      Before Poochigian, Acting P. J., Snauffer, J. and DeSantos, J.

Petitioner Charles M. (father) seeks extraordinary writ relief (Cal. Rules of Court, rules 8.452) from the juvenile court's orders issued at a combined six-, 12- and 18-month review hearing (Welf. & Inst. Code, §§ 366.21, subds. (e)(1) & (f)(1), 366.22, subd. (a)(1)),[1] terminating reunification services as to his nearly two-year-old daughter, A.M. (daughter), and setting a section 366.26 hearing for September 6, 2023, to implement a permanent plan of adoption. A.M.'s mother, A.H. (mother), did not file a writ petition. Father, who also seeks a stay of the section 366.26 hearing, contends the Fresno County Department of Social Services (department) failed to provide him reasonable reunification services and the juvenile court erred ordering them terminated. We deny the petition and the request for a stay.

## FACTUAL AND PROCEDURAL BACKGROUND

Daughter came to the department's attention when mother tested positive for methadone, methamphetamine, opiates, and amphetamines at daughter's birth. Daughter, who tested positive for opiates and required hospitalization as she was displaying significant withdrawal symptoms, was taken into protective custody and a dependency petition was filed on October 12, 2021.

At the outset of the case, father was not in custody. He declined to drug test or have his home inspected. The department considered him to be an alleged father. On November 6, 2021, father was arrested on numerous felony and misdemeanor charges and was in custody at the Kings County jail. The department now considered him to be a presumed father, as his name was on daughter's birth certificate, which indicated he signed a voluntary declaration of paternity.

At the January 31, 2022 jurisdiction hearing the juvenile court found true allegations in a second amended petition of (1) mother's inability to care for daughter due

---

[1]     All statutory references are to the Welfare and Institutions Code.

2.

to mother's drug use, and (2) father's failure to protect daughter from mother's drug use and to plan for daughter's care while incarcerated.

The disposition hearing was not held until August 1, 2022, as multiple continuances were granted to provide notice to several tribes based on father's claim of Indian ancestry. At the disposition hearing, the juvenile court found the Indian Child Welfare Act did not apply, and exercised its dependency jurisdiction over daughter, removed her from parental custody, and ordered reunification services for the parents. The juvenile court adopted the department's recommendation that father be provided the following services: parenting classes; assessments for mental health, substance abuse and domestic violence index, and any recommended treatment; and random drug testing. Father was granted monthly supervised visits while in custody and twice weekly visits on release. A combined six- and 12-month review hearing was set for February 1, 2023.

For the combined review hearing, the department recommended termination of the parents' reunification services and the setting of a permanency planning hearing. At the February 1, 2023 hearing, mother requested a contested review hearing, which was set for April 5, 2023. The hearing was continued twice and ultimately held over three days in May 2023, with testimony received on May 10, arguments made on May 17, and the trial court's decision issued on May 24. By that time, the hearing was conducted as a combined six-, 12- and 18-month review hearing.

The department's status reports were received into evidence. The department continued to recommend termination of reunification services. Daughter had been placed with paternal relatives who were willing to adopt her if reunification efforts failed.

Mother had not completed any of her services, although she regularly and consistently visited daughter. The report reviewed the department's contacts with father. The social worker advised father during a March 16, 2022 phone call that he would be ordered to participate in reunification services, which would include parenting classes, mental health, and substance abuse and domestic violence assessments and any

3.

recommended treatment. The social worker encouraged father to access any of these services that were offered through Kings County jail on his own. Father told the social worker he would look into that, but there had not been many classes offered due to Covid-19.

Beginning in May 2022, the social worker sent father monthly letters. The social worker advised father neither the department nor the court recognized the programs the Kings County jail offered as court-ordered services. The social worker encouraged father to participate in any classes or programs offered at the jail to demonstrate his efforts. In the letters issued after the disposition hearing, the social worker also reiterated the court-ordered services and told him to present any efforts he made to the social worker and his attorney. During his incarceration, father participated in monthly electronic supervised visits with daughter, facilitated by the paternal grandmother. The paternal grandmother reported the visits went well and father was appropriate.

On February 7, 2023, mother self-enrolled in an inpatient substance abuse program, Connected Recovery, in Van Nuys, California, but she discharged from the program when father was released from custody on February 23, 2023. Father reported his release from custody to the social worker on February 27, 2023, telling her he was on three years' probation and was ordered to complete a domestic violence class and drug treatment program as part of his probation. Father planned to enter the substance abuse program mother was attending, which she planned to reenter. Father believed he would receive additional time to complete services due to his incarceration, and stated he was unable to complete any services while in jail because the jail did not offer any classes or programs. Father and mother were admitted to the Connected Recovery inpatient substance abuse program on March 20, 2023.

The department initiated a parenting class referral for father on March 23, 2023. On March 27, 2023, father reported to the department that he was participating in groups at Connected Recovery and attending AA/NA meetings. Father stated he was doing all

4.

the required classes for his case and probation. Father was scheduled to participate in a virtual domestic violence index assessment on April 6, 2023. Father and mother were participating in twice-weekly supervised visits, which were being held virtually since the inpatient program was in another county. Father interacted appropriately with daughter and attempted to engage her during visits.

The social worker who had been assigned to the case since its inception testified at the hearing. She had not been able to observe or evaluate father as he was in custody at the Kings County jail from November 2021 to February 2023. During his incarceration, the social worker had a few phone calls with him, facilitated by paternal grandmother, and she sent him monthly letters from August 2022 to February 2023 advising him of the court-ordered services. She also sent him a letter before the disposition hearing in which she encouraged him to participate in whatever services were available at the Kings County jail. Father did not respond to the social worker's letters.

The social worker understood the dependency court did not recognize the services the jail offered, but the department always encouraged parents to participate in them to show they were trying to ameliorate the reasons for removal and make a behavior change. During one of her phone calls with father, he indicated there were no services being offered in the jail due to Covid-19. The social worker did not have any control over Kings County jail services or what they needed to do for their inmates. The social worker called the jail after father was released from custody and was advised that while father was in custody services were not being offered on a consistent basis in the jail. The social worker confirmed father received monthly virtual visits facilitated by the paternal grandmother while in custody.

The social worker testified about the status of father's services. Father was connected to parenting, but the program reported he was at risk of being dropped because he missed two classes. Father received mental health services at Connected Recovery, but she did not know the extent of those services. Father completed the Connected

5.

Recovery inpatient substance abuse program in mid-April 2023 and a domestic violence index assessment, but the results of that assessment were pending. While father was not enrolled in the county's random drug testing program, Connected Recovery did not have any concerns about his sobriety. Father indicated to the social worker he would do whatever was necessary for his case.

The 30-day substance abuse program mother and father completed did not satisfy the typical courses the department would provide, which typically lasted approximately 90 days. The program the parents completed did not have a plan for addressing sobriety and substance abuse on an ongoing basis. If the social worker were to implement father's case plan at that time, it could take more than a year to complete the components depending on his participation and consistency. The social worker did not believe there was a substantial probability daughter would be returned home within six months, as it was concerning the parents waited so long into the case to start addressing the substance abuse concerns that led to daughter's removal.

On cross-examination by father's attorney, the social worker testified father's visits since being released from custody had gone well and he participated in a drug rehabilitation program and completed the domestic violence index assessment. As far as missed parenting classes, the social worker conceded she did not confer with father about his scheduling obligations before enrolling him in the class. The social worker agreed that if father had employment obligations connected with his probation he might miss certain classes, but if he had communicated his schedule to her, she could have adjusted the classes.

The jail identified the following services as being offered while father was in custody: NA, AA, bible study, GED classes, a Courage to Change class, and some sort of job readiness class. Of these, only the AA/NA meetings would potentially be considered for reunification. The information the jail provided the social worker indicated father did not participate in any of these services, which father confirmed on his

6.

release from custody. Contrary to what jail officials told her, father indicated there were no services available. The social worker did not believe the department was able to send service providers to the jail to individually meet with inmates, but she did not inquire into that in relation to this case as she had never been approached with that question.

Father testified on his behalf. When asked if there were any services available in the jail during the 16 months he was in custody, father responded: "Other than church every other Thursday, there was nothing provided." When asked if AA and NA meetings were available, father stated he understood to access them you had be in a certain section of the jail, but they would not move him to the section where they were provided. Moreover, "in the time being of COVID they were not providing the classes any ways." There were no other programs available to father in the section of the jail where he was. Father was required to attend a drug treatment program as part of his probation, and he would have been returned to jail if he did not immediately enroll in one. He also was required to maintain gainful employment as part of his probation, which he had been doing to the best of his ability. The parenting classes conflicted with his work schedule, and he was only able to complete the assessment. Father, however, did not communicate his work schedule to the county.

Father submitted a binder of exhibits which were received into evidence. Father's Connected Recovery case manager reported in an April 21, 2023 letter that father graduated from the inpatient program early on April 16, 2023, and during the four weeks he was there, the case manager saw father invest time into daily group and AA meetings in which he shared how he intended to stay out of trouble. Father completed the 30-day program early by attending all groups and having a thorough aftercare plan. Father agreed to continue attending AA/NA meetings, apply to suitable jobs, and find a therapist or sponsor he could meet with at least weekly.

An entry in the delivered service log, which was part of father's exhibits, showed the social worker had a text exchange with father on April 21, 2023. Father stated he had

not thought about attending outpatient programs or NA/AA meetings, as he had been busy with work and his other children. He stated he needed to complete a 52-week domestic violence class, which went hand in hand with being held accountable and sober; he completed 18 months of DUI classes about three years ago; and he was open to going to AA/NA meetings if he needed to.

Father submitted a posthearing brief in which he argued the court must exercise its discretion to order at least an additional six months of services, and was precluded from scheduling or holding a section 366.26 hearing, because father did not receive reasonable services while incarcerated. He contended services were unreasonable because he was not provided any of the court-ordered services during his incarceration and no effort was made to determine whether the services the jail offered were available to him in the area where he was housed or to arrange for the provision of individual services.

In closing argument, county counsel addressed father's claim that he was not offered reasonable services because the department failed to create a special curriculum while he was incarcerated. County counsel argued: father created his predicament by breaking the law; the department ascertained two months before the disposition hearing that it did not recognize the services the Kings County jail offered and encouraged father to participate in any programs to demonstrate his efforts; of the services the jail offered, there was very little the department could work with to provide a case plan and service referrals; and the department provided the one service it could—visitation. County counsel asserted the department therefore provided reasonable services despite the scarcity of programs available in the jail, and the department could not be faulted because father could not participate in jail services due to Covid-19.

Father's attorney argued that despite father's custody status the department was obligated to provide reasonable services and the case could not proceed to a section 366.26 hearing unless reasonable services were provided. Father's attorney asserted the department made little or no inquiry to find out what services were offered at the jail and

8.

whether father had access to them, and reasonable efforts were not made to provide services while he was in or out of custody.

In issuing its decision, the juvenile court noted daughter was removed on October 7, 2021, and the 18-month date of April 7, 2023, had already passed. With respect to father, the juvenile court cited to the October 2021 team decision meeting, in which father refused to drug test or allow the department to access his home. Father was offered services on March 16, 2022, and ordered services on August 1, 2022. The juvenile court found the social worker could not coordinate services that were not available while father was in custody and the social worker communicated with him during that time.

The juvenile court was not concerned with father's compliance while in custody, but rather with his failure to access services when out of custody and to engage in aftercare as suggested by the Connected Recovery program. Because there was no way either parent could complete the case plan or have daughter returned to their care, and since the 18-month mark had passed and there was no legal reason to continue services to the 24-month date of October 7, 2023, the juvenile court decided to follow the department's recommendation. The juvenile court found clear and convincing evidence the department provided or offered reasonable reunification services, terminated reunification services, and set a combined section 366.30 status review hearing and section 366.26 permanency planning hearing for September 6, 2023.

## DISCUSSION

Father contends the juvenile court erred in finding he was provided reasonable reunification services because the department failed to provide him the necessary reunification services, such as domestic violence classes, parenting classes, and drug counseling, while he was incarcerated. He argues the department failed to make any effort to provide services, as it did not consider whether it could arrange individual services from county service providers, suggest alternative services, or determine the

9.

extent to which he had access to the non-qualifying services the jail occasionally offered. Consequently, father argues he was left without access to mandated services despite being in custody, as there were no jail services available and no other viable options for him to seek. We disagree, as father has failed to show how he was prejudiced by the department's efforts to implement the services plan.

*Reunification Services*

Dependency proceedings have the dual purpose of protecting the welfare of the dependent child and safeguarding the parent's right to properly raise their own child. (*In re La Shonda B.* (1979) 95 Cal.App.3d 593, 599.) If the child is removed from parental custody, the primary objective is to reunify the child with his or her family. (§ 202, subd. (a).) "The foundation and central, unifying tool in child welfare services is the [reunification] plan. The [reunification] plan must provide for the child's care and case management and must provide services that facilitate both return and, concurrently, permanency." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2023 ed.) Disposition Hearing, § 2.129[4].)

Reunification, however, is not an open-ended process. Consequently, the dependency statutes place a limit on its duration and require the juvenile court to monitor its progress by conducting periodic review hearings at six-month intervals. (§§ 361.5, subd. (a), 366, subd. (a)(1).) In general, services are limited to 18 months from the date the child was originally removed from parental custody. (§ 361.5, subd. (a)(3).) Daughter was initially removed from mother's custody on October 7, 2021, making April 7, 2023, the 18th month.

The purpose of reunification services is to place the parent in a position to gain custody of the child. (*In re Karla C.* (2010) 186 Cal.App.4th 1236, 1244.) To that end, the department must devise a reunification plan tailored to the unique needs of the family and make a good faith effort to help the parent access the services the plan provides. (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.) "The adequacy of reunification plans and

the reasonableness of the [department's] efforts are judged according to the circumstances of each case." (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.)

"The juvenile court is required to determine at each review hearing whether the parent was provided reasonable reunification services. (§§ 366.21, subds. (e)(8) & (f)(1)(A) & 366.22, subd. (a)(3).) A parent may challenge the department's evidence on that issue at the review hearing or on appeal from the juvenile court's findings and orders from the review hearing. The juvenile court may not set a section 366.26 hearing unless it finds by clear and convincing evidence the parent was provided reasonable reunification services. (§ 366.22, subd. (b)(3)(C).)" (*Serena M. v. Superior Court* (2020) 52 Cal.App.5th 659, 674.)

"To support a finding reasonable services were offered or provided, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult ....' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' " (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426.)

"With respect to an incarcerated parent, there is a statutory requirement that reunification services be provided 'unless the court determines, by clear and convincing evidence, those services would be detrimental to the minor.' (§ 361.5, subd. (e)(1).)" (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1011.) Since there was no finding in this case reunification services would be detrimental to daughter, reasonable reunification services were required to be provided during father's incarceration. The department must preliminarily identify services available to an incarcerated parent. (*In re*

11.

*Monica C.* (1995) 31 Cal.App.4th 296, 307.)  It cannot delegate to an incarcerated parent the responsibility for identifying such services.  (*Id.* at pp. 307–308.)

***Standard of Review***

"When a finding that reunification services were adequate is challenged on appeal, we review it for substantial evidence."  (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 971.)  In so doing, "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."  (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

The juvenile court's finding that reasonable reunification services were provided must be made upon clear and convincing evidence.  (§ 366.21, subd. (g)(1)(C)(ii).)  When the juvenile court is required to apply the clear and convincing standard of proof, "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true."  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

***Father Was Provided Reasonable Reunification Services***

The evidence shows the department failed father when the social worker did not identify the services available while he was in custody at the Kings County jail and instead left it to father to identify and access whatever services were available.  It was the department's duty to inquire, and it did not.  Father, however, fails to show how he was prejudiced by the dereliction.

Father knew what was required of him and apparently inquired on his own concerning the availability of jail services.  He learned, however, that few services were being offered due to Covid-19, and in any event, he could not access the only services that could be considered for reunification, namely, the NA/AA meetings, where he was housed.  Accordingly, father did not participate in any jail services and while he apparently asked to be moved to an area where he could access services, the jail refused.

The social worker was not required to negotiate a different placement in the jail that would allow him to access jail services, and even if the social worker made such a request, it was doubtful it would have been granted. Ultimately, father's failure to reunify had little to do with the social worker's efforts to assist him, which would have been futile since services were unavailable where father was housed.

Although the department's efforts to promote reunification for father were far from stellar, we cannot say under the totality of the circumstances they were unreasonable, particularly in the absence of any evidence father was prejudiced.

## **DISPOSITION**

The petition for extraordinary writ and request for a stay are denied. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A) of the California Rules of Court.

13.